UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00369-MOC

| | | |
|---|---|---|
| **LATASHA R. MIMS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff Latasha R. Mims' Motion for Summary Judgment (#11) filed November 12, 2018, and Defendant Commissioner's Motion for Summary Judgment (#15) filed February 7, 2019. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on her application for disability insurance benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REVERSED and REMANDED for further proceedings consistent with this order.

## I. BACKGROUND

Plaintiff filed an application for disability insurance benefits on November 28, 2014. (Tr. 15). Plaintiff alleges disability beginning May 13, 2013. (Tr. 15). The application was denied initially and upon reconsideration. (Tr. 86, 91). Plaintiff requested a hearing on April 29, 2015. (Tr. 95). After the hearing on June 8, 2017, (Tr. 15), the Administrative Law Judge ("ALJ") issued an unfavorable decision for Plaintiff. (Tr. 24). Following the ALJ's denial of benefits, Plaintiff requested a review of the hearing, which was subsequently denied by the Appeals Council on May 7, 2018. (Tr. 5).

1

The ALJ first found at step one that Plaintiff had no substantial gainful activity since May 13, 2013, and had met the insured status requirement through December 31, 2018. (Tr. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: a history of breast cancer with a double mastectomy, degenerative disc disease of the lumbar spine, and hypertension. (Tr. 17). At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the level of severity of one of the impairments found in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 18). The ALJ further stated that "[t]he claimant's condition does not meet the requirements of Listing 1.04 (disorders of the spine) because the claimant does not have evidence of nerve root compression, or spinal arachnoiditis, or lumber spine stenosis resulting in pseudoclaudication." (Tr. 18).

At step four, regarding Plaintiff's residual functional capacity ("RFC"), the ALJ wrote:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday with normal breaks and sit for six hours out of an eight-hour workday with normal breaks) as defined in 20 CFR 404.1567(b) except she would be limited to only frequent climbing, stooping, kneeling, and crawling. She could occasionally crouch. The claimant would be linked to frequent overhead reaching with the left upper extremity and occasional reaching with the right upper extremity. The claimant could only occasionally handle [sic?] and finger bilaterally.

(Tr. 18).

Next, as step five, the vocational expert ("VE"), in response to a hypothetical posed by the ALJ, testified that Plaintiff was unable to perform any of her past work as a data entry clerk. (Tr. 22, 57). However, the VE went on to testify that Plaintiff could perform other jobs that are readily available in the national economy, such as "Baker Conveyor Worker," a light occupation of which there are approximately 23,000 jobs nationally, "Bus Monitor," a light occupation of which there are approximately 17,000 jobs nationally, or "Usher," a light occupation of which there are

2

approximately 23,000 jobs nationally. (Tr. 23–24). From the information above, the ALJ concluded that a finding of not disabled was appropriate. (Tr. 24).

Plaintiff has exhausted all administrative remedies and now appeals the ALJ's decision. Plaintiff argues: (1) the ALJ did not properly consider her anemia, chemotherapy-induced peripheral neuropathy, sacroiliac arthritis, and spinal annular tear; (2) the ALJ did not properly connect the evidence to any of the adverse credibility findings and disregarded favorable evidence; and (3) the ALJ did not show alternative work exists in significant numbers in multiple regions of the country, or in the region in which Plaintiff resides. (Pl. Mem. 1).

**II.     STANDARD OF REVIEW**

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. The district court's primary function when reviewing a denial of benefits is to determine whether the ALJ's decision was supported by substantial evidence. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing 42 U.S.C. § 405(g); Knox v. Finch, 427 F. 2d 919, 920 (5th Cir. 1970)). A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman, 829 F.2d at 517 (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Put plainly, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

(1938)). However, it has been determined that "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).

When considering an application for disability benefits, ALJs use a five-step process to evaluate the merits of the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ asks whether the claimant has been working. At step two, the ALJ determines whether the claimant's medical impairments meet the severity and duration requirements. At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. At step four, the ALJ determines whether the claimant can perform any past work with the limitations caused by the medical impairments. At step five, the ALJ determines whether the claimant could perform any other work. Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (citing 20 C.F.R. § 416.920(a)(4) (2014)).

During step five, the burden shifts from the claimant to the Commissioner, who must prove by a preponderance of the evidence that the claimant is able to perform other work that exists in significant numbers throughout the national economy. See Mascio, 780 F.3d at 635 (citing 20 C.F.R. §§ 416.920(a)(4)(v), .960(c)(2), .1429). Typically, the Commissioner puts forth this evidence through the testimony of a VE who is responding to a hypothetical or a series of hypotheticals posed by the ALJ that incorporates the claimant's specific limitations. See Mascio,

780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." Id.

Within the five-step process, the RFC determination is particularly important. The claimant's RFC assessment must occur before step four "[i]f the claimant fails to demonstrate she has had a disability that meets or medically equals a listed impairment at step three." Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017). The RFC accounts for all the claimant's limitations. See C.F.R. § 416.945 (2012). Using the RFC, the ALJ determines whether the claimant can do past relevant work or other work in the national economy. Id. The Fourth Circuit has explained the ALJ's responsibility as follows;

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). If the Commissioner, through the designate, the ALJ, meets their burden in assessing these factors and the claimant is deemed not disabled, then the application is denied. Id.

### III. FINDINGS AND CONCLUSIONS

Plaintiff alleges three assignments of error: (1) the ALJ did not evaluate all of the impairments and their effects, (2) the ALJ did not logically explain any adverse credibility

5

findings, and (3) the ALJ did not sufficiently show that significant numbers of alternative work exist in multiple regions of the country. (See Pl. Mem. 1).

Plaintiff's first assignment of error is that the ALJ did not properly evaluate all of the claimant's impairments. Plaintiff argues the ALJ should have identified additional impairments, including anemia, chemotherapy-induced peripheral neuropathy, and sacroiliac arthritis and annular tear. (Pl. Mem. 1, 7–12). In response, Defendant contends there is no evidence that any of these impairments caused significant limitations in Plaintiff's ability to work, or, alternatively, that the limitations caused by the impairments are already considered in the RFC finding. Defendant argues that, in any event, the impairments are not severe. Defendant contends that Plaintiff has not shown that she has severe, medically determinable impairments because the medical evidence does not show that her anemia, chemotherapy-induced peripheral neuropathy, sacroiliac arthritis, or annular tear caused any work-related limitation.

The Court agrees with Plaintiff that the ALJ failed to properly evaluate all of Plaintiff's impairments and remand is appropriate for this reason alone. Here, the ALJ said nothing about Plaintiff's anemia, chemotherapy-induced peripheral neuropathy, mechanical (arthritic) sacroiliac pain, or annular tear. Defendant argues that Plaintiff's anemia, chemotherapy-induced peripheral neuropathy, mechanical (arthritic) sacroiliac pain, and annular tear are not "severe" and, therefore the ALJ's failure to find that they were severe impairments was harmless. However, whether these impairments were found to be severe at step two is immaterial.[1] An

---

[1] Defendant's argument that Plaintiff does not meet a listing similarly misses the point. Specifically, as to Plaintiff's annual tear, the ALJ cited the supposed "lack of nerve involvement" as a reason to discount Plaintiff's allegations, and to support his RFC. As Plaintiff notes, however, Plaintiff's annual tear means Plaintiff has nerve involvement. Thus, the ALJ's credibility and RFC findings are flawed because the ALJ erroneously said Plaintiff had no nerve involvement, but the medical evidence shows that Plaintiff did, in fact, have nerve involvement.

6

ALJ's RFC, credibility, listing, step-four, and step-five evaluations must account for all impairments, even those not found "severe" at step two. NLRB v. Kentucky River Community Care, Inc., 532 U.S. 706, 714, n.8 (2001) (citation omitted); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Furthermore, the error was not harmless. The failure to the ALJ to discuss all of Plaintiff's impairments, severe or not, affected his credibility analysis. That is, he did not assess whether her subjective complaints of pain were credible in light of all of her impairments, including anemia, chemotherapy-induced peripheral neuropathy, mechanical sacroiliac pain, and annular tear. An ALJ, not a reviewing court, "must consider the combined effect of a claimant's impairments and not fragmentize them"; and "[a]s a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Walker v. Bowen, 889 F.2d 47, 49–50 (4th Cir. 1989) (citing cases).

The Court further finds that the ALJ's credibility analysis was flawed because the ALJ mischaracterized Plaintiff's own testimony regarding her ability to perform certain daily activities in determining whether the allegations of disabling pain were credible. The ALJ stated that Plaintiff admitted she cooked simple meals, shopped, drove, lightly cleaned the house, and dressed herself. (Tr. 19, 22). The ALJ stated that "[t]he claimant has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Tr. 19). The ALJ found this "strongly suggests the claimant was not so limited by her impairments that she could not engage in these activities herself." (Tr. 19). An ALJ may consider plaintiff's daily activities when assessing her credibility, but plaintiff need not be confined to bed to be found disabled. See Trotten v. Califano, 624 F.2d 10, 11–12 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found

7

disabled under the Social Security Act"). Plaintiff never claimed that she could not perform certain household tasks. Furthermore, her ability to perform certain tasks does not prove that she can sustain work on a "regular and continuing basis … 8 hours a day, for 5 days a week." 7 SSR 96-8p; 20 C.F.R. § 404.1545(b), (c) (2018). Defendant simply fails to justify the ALJ's assumption that these activities "equated with the ability to sustain a full-time job." Brown v. Comm'r of Soc. Sec., 873 F.3d 251, 263, 265 (4th Cir. 2017); see id. at 258–70. See Monroe v. Colvin, 826 F.3d 176, 188–91 (4th Cir. 2016), Woods v. Berryhill, 888 F.3d 686, 694–95 (4th Cir. 2018).

More importantly, however, the ALJ mischaracterized Plaintiff's testimony by omitting the limitations that Plaintiff claimed she had with regard to daily activities. Plaintiff specifically testified that she helped her aunt around the house with "light stuff," but that her aunt "really don't ask me to do much because she knows what I've been through." (Tr. 46). When asked whether she does "anything on a regular basis," Plaintiff responded, "No. I haven't really." (Tr. 46). Plaintiff also stated that although she does her own laundry, she handles it "how I can," but that she can't do "a lot of bending over." (Tr. 47).

The ALJ also stated that, despite Plaintiff's testimony that her "pain radiated into her low extremities" and "[e]pidurals allegedly provide relief for 30 days," "the claimant admitted that she was able to attend her children's school activities" and "[s]he also admitted that she remains able to care for herself despite her alleged symptoms." (Tr. 19). Again, the ALJ's opinion does not adequately characterize Plaintiff's own testimony at the hearing. That is, Plaintiff acknowledged that she was able to attend some of her children's activities, but she went on to state, in full, "My daughter, she does cheer. So, I, I try to go to the games. And, what's funny is when I go to the games I don't sit. I'll stand on the side, or, I may sit for a little, but I, I just—I

8

don't sit the whole games. My son played basketball as well, and, I—there's been times I couldn't even show up to his games because I was in pain or couldn't get out the car because I was having bad back spasms and stuff. So, I just make do how I can." (Tr. 48). On remand, when reassessing the evidence and Plaintiff's claim, the ALJ needs to adequately recount Plaintiff's testimony given at the hearing. Accord Kline v. Astrue, No. 1:08cv2284, 2009 WL 4730590, at *3 (N.D. Ohio Dec. 2, 2009) (remanding where "Plaintiff's testimony, however, demonstrates that the ALJ mischaracterized the scope of her ability to perform daily activities").

As to the activities that Plaintiff engages in, the ALJ stated: "The medical evidence does not show the claimant reported to treatment providers an inability to cook, wash dishes, wash laundry, or clean the home (see the medical evidence, generally). Furthermore, the medical evidence does not evince a clear pattern of poor hygiene, unkempt appearance, or an overall inability to independently bathe, dress, groom, or use the toilet." The ALJ stated that if Plaintiff was unable to engage in certain activities, then she "would be expected to report this deficit to her health care providers," but "no such complaints were ever documented." (Tr. 15). The ALJ concluded that the absence of medical reports that Plaintiff was unable to perform these tasks "strongly suggests" she can do them. (Id.).

The absence of a record of Plaintiff's daily activities and her functional limitations in her medical reports, however, does not mean she did not have those functional limitations. The "primary function of medical records is to promote communication and record-keeping for health care personnel" not to "provide evidence for disability determinations." Sampson v. Comm'r of Sec. Sec., 694 F. App'x 727, 735 (quoting Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007)). Thus, the mere fact that function limitations are not set out in Plaintiff's treatment notes does not make those limitations inconsistent with the treatment notes.

9

In sum, the ALJ failed to discuss various of Plaintiff's impairments in determining Plaintiff's RFC and in assessing credibility. Furthermore, the Court finds that the ALJ mischaracterized Plaintiff's own testimony with regard to her functional limitations. The Court further finds that these errors were not harmless. For these reasons, the Court will remand this action for further proceedings before the ALJ. Because the Court finds that this matter shall be remanded for these reasons, the Court does not address Plaintiff's additional argument that the ALJ erred at step five.

## IV. CONCLUSION

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

### ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner to take appropriate action to provide a full evaluation of Plaintiff's claim to benefits.

Signed: September 26, 2019

Max O. Cogburn Jr
United States District Judge